IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| TERRY BROWN, | Case No.: 3:23-cv-00118-AN |
| Plaintiff, | |
| v. | |
| | OPINION AND ORDER |
| UNION PACIFIC RAILROAD COMPANY, and PORTLAND TERMINAL RAILROAD COMPANY, | |
| Defendants. | |

Plaintiff Terry Brown brings employment discrimination and retaliation claims against defendants Union Pacific Railroad Company ("Union Pacific") and Portland Terminal Railroad Company ("PTRC") (collectively, "defendants"), generally alleging racial discrimination and retaliation. Defendant Union Pacific filed this Motion to Compel Arbitration, ECF [22], pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3). Defendant PTRC filed a Motion for Joinder, ECF [33], in Union Pacific's motion. After reviewing the parties' pleadings, the Court finds that oral argument will not help resolve this matter. Local R. 7-1(d). For the reasons set forth below, Union Pacific's motion is GRANTED, and PTRC's motion is DENIED.

## LEGAL STANDARD

In all contracts involving interstate commerce, the Federal Arbitration Act ("FAA") specifies that "written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (quoting 9 U.S.C. § 2). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* (emphasis in original) (citing 9 U.S.C. §§ 3-4). The district court must limit itself "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement

encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). But the "liberal federal policy regarding the scope of arbitrable issues is inapposite" to the question of whether a party assented to the arbitration agreement. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006). The existence of a valid arbitration agreement remains "a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (internal quotation marks omitted). Because arbitration is "a matter of contract," the FAA "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (citation omitted).

A court must decide "the threshold issue of the *existence* of an agreement to arbitrate." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140-41 (9th Cir. 1991) (emphasis in original). "[P]arties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence," but "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (quoting *First Options of Chicago, Inc v. Kaplan*, 514 U.S. 938, 944 (1995)). In deciding whether an agreement to arbitrate exists, a court should apply a summary judgment-style standard, meaning "[o]nly when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law" that an agreement to arbitrate exists. *Three Valleys*, 925 F.2d at 1141 (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)). A court must give the party opposing a motion to compel arbitration "the benefit of all reasonable doubts and inferences that may arise." *Id.* The party seeking to compel arbitration bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). When "the making of the arbitration agreement" is at issue, "the

2

court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. "The court shall hear and determine such issue" if the party alleged to be in violation of the agreement does not demand a jury trial. *Id.*

## BACKGROUND

Union Pacific is a Delaware corporation and railroad in interstate commerce. First Amended Compl., ECF [21], ¶ 4. PTRC is a corporation and railroad in interstate commerce incorporated in the state of Oregon, doing business as a railroad in interstate commerce in Portland, Oregon. *Id.* ¶ 5. PTRC is owned by Union Pacific and Burlington Northern Santa Fe Railway Company. *Id.*

Plaintiff was employed by Union Pacific from 2004 to 2019 and was employed by Union Pacific and PTRC from 2019 to 2021. *Id.* ¶ 6. From 2013 to 2021, plaintiff received various stock awards. These stock awards were made pursuant to the Union Pacific Corporation 2013 Stock Incentive Plan ("the Plan"), which contains Standard Terms and Conditions. Decl. of Trevor Kingston in Supp. of Union Pacific's Mot. to Compel Arbitration ("Kingston Decl."), ECF [23], Ex. A, B, at 2-3. The Plan states that by electronically accepting the Retentions Shares Agreement and Standard Terms and Conditions, plaintiff acknowledged and agreed to an arbitration clause contained in the Plan.

In relevant part, plaintiff acknowledged and agreed to the following arbitration clause in Section 14 of the Plan:

> "You and the Company each agree that any controversy claim, or dispute arising out of or relating to these Standard Terms and Conditions or arising out of or relating to your employment relationship with the Company or any of its affiliates, the termination of such relationship, or your conduct following the termination of such relationship, shall be resolved by binding arbitration before a neutral arbitrator on an individual basis only, and not in any form of class, collective, or private attorney general representative proceeding. By way of example only, claims subject to this agreement to arbitrate include claims litigated under federal, state and local statutory or common law, such as the Family Medical Leave Act, the Age Discrimination in Employment Act of 1967, Older Workers Benefit Protection Act of 1990, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1990, the Americans with Disabilities Act, the Federal Employers Liability Act, the Federal Railway Safety Act, the Worker Adjustment and Retraining Notification Act, the Genetic Information Nondiscrimination Act, the law of contract and the law of tort. You and the Company each agree that such claims may be brought in an appropriate administrative forum, but at the point at which you or the Company seek a judicial forum to resolve the matter, this agreement for binding arbitration becomes effective, and you and the Company each hereby knowingly and voluntarily waive any right to have any such dispute tried and adjudicated by a judge or jury.

"The parties will submit the dispute, within 30 business days following service of notice of such dispute by one party on the other, to the American Arbitration Association (AAA) for prompt resolution in Salt Lake City, Utah, under its rules for employment disputes.  There shall be a single arbitrator, chosen in accordance with such rules, who at such time shall be on AAA's Judicial Panel.  The decision of the arbitrator will be final and binding upon the parties, and judgment may be entered thereon in accordance with applicable law in any court having jurisdiction.  The arbitrator shall have the authority to make an award of monetary damages and interest thereon.  The arbitrator shall have no authority to award, and the parties hereby waive any right to seek or receive, specific performance or an injunction, punitive or exemplary damages.  The arbitrator will have no authority to order a modification or amendment of these Standard Terms and Conditions. The arbitrator shall have the authority to award costs of arbitration, including reasonable attorney's fees, to the prevailing party, but in the absence of such award the parties shall bear their own attorney and filing fees, unless otherwise agreed upon mutually by the parties or required by law. The Company shall bear the cost of the arbitrator's fees.

"Notwithstanding the foregoing, the Company may seek injunctive relief to enforce any one or more of the employee covenants set forth in Sections 5, 6, 7, 8, 9, 10, 11 or 13[1] of these Terms and Conditions, in a court of competent jurisdiction as set forth in Section 16 below."

*Id.* Ex. B, at 7.  Further, the Plan's Standard Terms and Conditions also contain a Severability clause:

"If any provision of these Standard Terms and Conditions is, becomes, or is deemed to be invalid, illegal, or unenforceable in any jurisdiction, such provision shall be construed or deemed amended or limited in scope to conform to applicable laws or, in the discretion of the Company, it shall be stricken and the remainder of these Standard Terms and Conditions shall remain in force and effect."

*Id.* at 8.

Union Pacific filed the present motion on June 2, 2023, requesting that the Court compel plaintiff to arbitrate his claims and dismiss the case without prejudice.  On July 13, 2023, PTRC filed a Notice of Joinder in Union Pacific's Motion to Compel, which this Court construes as a Motion for Joinder, arguing that it may enforce the arbitration provision either as an "affiliate," a third-party beneficiary, or a nonsignatory under principles of contract law.

## DISCUSSION

The arbitration clause satisfies the first two requirements for the Court to compel enforcement of its terms.  First, the parties clearly agreed to arbitrate.  Each year, from 2013 to 2021,

---

[1] Sections 5, 6, 7, 8, 9, 10, 11 or 13 concern confidentiality, trade secrets, non-solicitation, and non-competition. Kingston Decl., Ex. B., at 3-5, 6-7.

plaintiff signed the Standard Terms and Conditions, which states that by electronically accepting the Retentions Shares Agreement and Standard Terms and Conditions, plaintiff acknowledges and agrees to an arbitration clause. Second, the arbitration clause covers the claims that make up this dispute, as it provides for "any controversy, claim, or dispute arising out of or relating . . . to [plaintiff's] employment relationship with [Union Pacific]." *Id.* at 7. Thus, the Court must compel enforcement of the arbitration agreement according to its terms, unless the agreement may be invalidated according to a traditional contract defense. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

## A.    Unconscionability

Plaintiff argues that the arbitration clause is unconscionable, and therefore invalid. The party opposing arbitration bears the burden of proving unconscionability. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017). Federal courts apply "ordinary state-law principles that govern the formation of contracts" to determine whether the parties agreed to arbitrate. *First Options*, 514 U.S. at 944. The parties agree that Utah law applies to the contract here. *See* Union Pacific's Mot. to Compel Arbitration ("Def.'s Mot.), ECF [22], at 7; Pl.'s Opp. to Def.'s Mot. ("Pl.'s Opp."), ECF [32], at 14.

The unconscionability analysis involves two parts: (1) substantive unconscionability; and (2) procedural unconscionability. Substantive unconscionability "focuses on the contents of an agreement, examining the relative fairness of the obligations assumed." *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 402 (Utah 1998) (internal quotation marks omitted). Procedural unconscionability "focuses on the negotiation of the contract and the circumstances of the parties." *Id.* at 403 (citation omitted). Substantive unconscionability alone may support a finding of unconscionability; however, procedural unconscionability without any substantive imbalance will rarely render a contract unconscionable. *Sosa v. Paulos*, 924 P.2d 357, 361 (Utah 1996). In this case, the Court focuses on substantive unconscionability because its absence is dispositive.[2]

---

[2] While the Court does not address plaintiff's procedural unconscionability argument, it similarly fails. Plaintiff has failed to present evidence that the negotiation of the contract and the circumstances of the parties oppressed or unfairly surprised plaintiff. Rather, the evidence shows that plaintiff, over a seven-year period, continued to sign the agreement and receive equity grants, which was conditioned on an arbitration agreement. Thus, plaintiff cannot succeed on

1.      *Substantive Unconscionability*

To be substantively unconscionable under Utah law, a contractual term must be more than "unreasonable or more advantageous to one party." *Ryan*, 972 P.2d at 402. The terms of a contract must be "so one-sided as to oppress or unfairly surprise an innocent party," or "an overall imbalance in the obligations and rights imposed by the bargain" must exist. *Sosa*, 924 P.2d at 361 (cleaned up).

Plaintiff claims that the arbitration clause's unilateral litigation carve-out, bilateral fee-shifting provision, and prohibition on punitive damages and injunctive relief make it "so one-sided" that it oppresses plaintiff and creates an "overall imbalance" between the parties. Pl.'s Opp. 18.

a.      Unilateral Carve-Out

Plaintiff argues that the arbitration clause's unilateral litigation carve-out, which requires plaintiff to arbitrate any cause of action but permits Union Pacific to litigate an array of claims, renders the clause substantively unconscionable. Namely, the arbitration clause requires plaintiff to arbitrate:

> "*any* controversy, claim, or dispute arising out of or relating to these Standard Terms and conditions or arising out of or relating to your employment relationship with the Company or any of its affiliates, the termination of such relationship, or your conduct following the termination of such relationship."

Kingston Decl., ¶ 4, Ex. B, at 7 (emphasis added). The clause allows Union Pacific, on the other hand, to "seek injunctive relief to enforce *any one or more of the employee covenants* set forth in Sections 5, 6, 7, 8, 9, 10, 11, or 13 of these Terms and Conditions, in a court of competent jurisdiction." *Id.* (emphasis added). In particular, Union Pacific can protect confidential information (Sections 5-7) and trade secrets (Sections 5-7), preclude plaintiff from working for Union Pacific competitors (Sections 8 and 11), or restrict solicitation of Union Pacific customers (Section 9) or employees (Section 10) with an injunction, while, under the clause, plaintiff cannot.

Plaintiff points to several cases declining to enforce arbitration clauses with unilateral litigation carve-outs. In *Owner-Operator Independent Drivers Association v. C.R. England, Inc.*, the District Court of Utah observed that the employment contracts at issue "allow C.R. England to . . . bring

---

procedural unconscionability.

any legal actions it deems necessary regarding its claimed property" through litigation while "purport[ing] to bind the drivers to submit any and all disputes to an expensive arbitration proceeding," rendering the contract "so overwhelmingly favorable to C.R. England that it is effective only *against* the drivers." 325 F. Supp. 2d 1252, 1264-65 (D. Utah 2004) (emphasis in original).

Plaintiff also distinguishes *Love v. Overstock.com, Inc.*, No. 2:22-cv-00118-DBB-CMR, 2022 WL 3345730 (D. Utah Aug. 12, 2022). There, arbitration was compelled despite a unilateral litigation carve-out. The District Court of Utah held that the "carve-out does not rise to the level of substantive unconscionability recognized in this circuit" because (1) "[t]he carve-out does not target the claims that Love is most likely to need"; (2) the plaintiff could seek injunctive relief through the arbitrator; (3) "certain types of unilateral carve-outs are common business practice"; and (4) the plaintiff alleged no claims that she could not pursue through arbitration as opposed to courts. *Id.* at *6.

Plaintiff contends that *Love* should be disregarded because the court cited with approval a case that suggests the Overstock.com carve-out is unconscionable, yet reached the opposite conclusion after confusing the plaintiff, Love, for the defendant, Overstock.com. The *Love* court observed that "the carve-out does not target the claims that Love is most likely to need,", at *6, but cited a District of New Mexico case stating that an arbitration agreement is unconscionable if it exempts from arbitration "those judicial remedies that the drafting party with superior bargaining power is likely to need." *Love*, 2022 WL 3345730, at *6 n.72 (citing *Evangelical Lutheran Good Samaritan Soc'y v. Moreno*, 277 F. Supp. 3d 1191, 1236 (D.N.M. 2017)). The court's invocation of *Evangelical Lutheran* reveals its concern with whether the carve-out disproportionately benefited the *drafting party*—Overstock.com, not Love. In plaintiff's view, the *Love* carve-out did exactly what the *Evangelical Lutheran* court forbade—exempted from arbitration precisely those claims that Overstock.com, the more powerful party that drafted the arbitration clause, would most want to pursue against Love.

The Court agrees. The *Love* court, indeed, cited *Evangelical Lutheran* for the conclusion that Overstock.com's "carve-out does not target the claims that Love is most likely to need." *See Love*, 2022 WL 3345730, at *6 n.72 (citing *Evangelical Lutheran*, 277 F. Supp. 3d at 1236 ("[A]n arbitration

agreement is substantively unconscionable if it contains a unilateral carve-out that explicitly exempts from mandatory arbitration those judicial remedies that the *drafting party with superior bargaining power* is likely to need." (Emphasis added))).

In *Evangelical Lutheran*, the court noted, in contrast to the above parenthetical, that "an arbitration agreement that contains a bilateral carve-out that explicitly excludes from mandatory arbitration a certain set of claims is not substantively unconscionable, even if the party with superior bargaining power is more likely to assert the excluded claims in a judicial forum." *Evangelical Lutheran*, 277 F. Supp. 3d at 1236-37 (citing *Dalton v. Santander Consumer USA, Inc.*, 385 P.3d 619, 624 (N.M. 2016) (holding that arbitration agreement between lender and borrower that included bilateral exception for claims less than $10,000 was not substantially unconscionable, "even if one party is substantially more likely to bring small claims actions")). Ultimately, the *Evangelical Lutheran* court held that the arbitration agreement at issue did not "rise to the level of substantive unconscionability, because it broadly covers 'any legal controversy, dispute or claim of any kind arising out of or related to this Admission agreement', which would capture claims equally by both parties." *Id.* at 1237.

Additionally, the *Love* court distinguished *Patterson v. Nine Energy Serv., LLC*, 330 F. Supp. 3d 1280 (D.N.M. 2018), a case also from the District of New Mexico. In *Patterson*, the court recognized that "[i]f an arbitration agreement exempts from arbitration claims that the stronger party will likely bring, but mandates arbitration for claims that the weaker party will likely bring, then the arbitration agreement is substantively unconscionable." *Id.* at 1310 (citations omitted). The court found that the arbitration agreement at issue explicitly exempted from arbitration claims that only the stronger party, the defendant, would bring, *i.e.*, moving for injunctive relief to protect the defendant's trade secrets.[3] *Id.*

The *Love* court, however, found that unlike *Patterson*, Overstock.com's carve-out applied to only four provisions: confidential information, inventions, returning company documents, and

---

[3] The arbitration agreement in *Patterson* allowed the defendant to seek injunctive relief to enforce confidentiality and protection of trade secrets and other non-public information and enforce non-competition and non-solicitation provisions. *Patterson*, 330 F. Supp. 3d at 1310.

solicitation of employees.  *Love*, 2022 WL 3345730, at \*6.  Further, the arbitration agreement in *Love*, again unlike *Patterson*, allowed the plaintiff to seek injunctive relief through the arbitrator.  *Id.*

The cases cited and the reasoning provided by the *Love* court, make clear that its holding is flawed.[4]  The *Love* court should have found that Overstock.com's carve-out targeted the claims that *the defendant* was most likely to need, not the plaintiff.  The carve-out in *Love* targeted virtually the same claims as *Patterson*.  The most notable difference is the plaintiff's access to injunctive relief, unlike the plaintiff in *Patterson*.  The *Love* court likely could have reached the same conclusion under that fact alone, because the injunctive relief provision did not create "an overall imbalance in the obligations and rights imposed by the bargain."  *Id.*

In the present case, the arbitration agreement is nearly identical to the agreement in *Patterson*.  Union Pacific can seek injunctive relief to protect confidential information and trade secrets, preclude plaintiff from working for Union Pacific's competitors, or to restrict solicitation of Union Pacific's customers or employees, while, under the clause, plaintiff cannot.  Thus, the Court finds that the unilateral carve-out is substantively unconscionable.

      b.      Bilateral Fee-Shifting Provision

Plaintiff contends that the arbitration clause features another unconscionable provision: a bilateral fee-shifting requirement.  The challenged portion of the clause states:

> "the arbitrator shall have the authority to award costs of arbitration, *including reasonable attorney's fees*, to the prevailing party, but in the absence of such award the parties shall bear their own attorney and filing fees, unless otherwise agreed upon mutually by parties or required by law."

Kingston Decl., ¶ 4, Ex. B, at 7 (emphasis added).

Plaintiff makes two separate arguments: (1) that a plaintiff would never have to pay attorney's fees in court unless the suit was "vexatious, frivolous, or brought to harass or embarrass"; and (2) the provision violates plaintiff's right to statutory remedies.

[4] The Court finds that the holding in *Teske v. Paparazzi, LLC*, No. 4:22-cv-00035-DN-PK, 2023 WL 2760648 (D. Utah Apr. 3, 2023) similarly flawed.

As for plaintiff's first argument, a plaintiff is never guaranteed, unless by statute or constitutionally, the right to attorney's fees or the right to not pay attorney's fees. The fact that arbitration operates different than litigation is not enough to support substantive unconscionability. Indeed, in *Green Tree Financial Corporation-Alabama v. Randolph*, the United States Supreme Court, in consideration of an arbitration agreement, noted that "the existence of large arbitration costs could preclude a litigate . . . from effectively vindicating [a plaintiff's] federal statutory rights in the arbitral forum." 531 U.S. 79, 90 (2000). However, "the 'risk' that [a plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Id.* at 91. Similarly, the first situation is too speculative to justify the invalidation of an arbitration clause.

As for plaintiff's second argument, bilateral fee-shifting provisions are substantively unconscionable when those agreements operate as a "prospective waiver of a party's *right to pursue* statutory remedies." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013) (emphasis in original). However, plaintiff's argument is defeated by the "or required by law" language. The arbitration agreement guarantees remedies required by law, including statutory remedies. Accordingly, the Court finds that the provision is not substantively unconscionable.

c.     Punitive Damage and Injunctive Relief Prohibition

Finally, plaintiff argues that the arbitration clause includes the kind of sharp limitation on remedies that courts routinely deem unconscionable. The clause allows the arbitrator to award monetary damages plus interests, but then states, "The arbitrator shall have no authority to award, and the parties hereby waive any right to seek or receive, specific performance, or an injunction, punitive or exemplary damages." Kingston Decl., ¶ 4, Ex. B, at 7.

While courts applying Utah law have not yet addressed the conscionability of restrictions on punitive damages and injunctive relief, plaintiff's argument has merit. A party who agrees to arbitrate their statutory claims remains entitled to "the substantive rights afforded by the statute." *Velez v. Robert J. Derby & Assocs., PC*, 343 P.3d 324, 327 (Utah Ct. App. 2015). Restricting plaintiff from pursuing punitive damages and injunctive relief prevents him from vindicating statutory rights. Thus, the Court finds that

this prohibition is substantively unconscionable.

      2.    *Severability*

      While the Court finds the unilateral carve-out and prohibition on punitive damages and injunctive relief substantively unconscionable, those provisions can be severed from the rest of the arbitration clause. "In Utah, contract provisions are severable if the parties intended severance at the time they entered into the contract and if the primary purpose of the contract could still be accomplished following severance." *Sosa*, 924 P.2d at 363 (citing *Mgmt. Servs. Corp. v. Dev. Assocs.*, 617 P.2d 406, 408 (Utah 1980)).

      Here, the Court finds that plaintiff, over the course of seven years, agreed to the following severability provision:

> "If any provision of these Standard Terms and Conditions is, becomes, or is deemed to be invalid, illegal, or unenforceable in any jurisdiction, such provision shall be construed or deemed amended or limited in scope to conform to applicable laws or, in the discretion of the Company, it shall be stricken and the remainder of these Standard Terms and Conditions shall remain in force and effect."

Kingston Decl., Ex. B, at 8. Further, the Court finds that severance of the unilateral carve-out and prohibition on punitive damages and injunctive relief portions of the arbitration provision will not affect plaintiff's substantive rights and will still accomplish the primary purpose of the provision—to arbitrate all disputes. Accordingly, the Court severs the unilateral carve-out and the prohibition on punitive damages and injunctive relief portions of the arbitration provision.

**B.    Federal and State Public Policies Against Employment Discrimination**

      Finally, plaintiff argues that, in addition to its substantive and procedural unconscionability, the arbitration clause is unenforceable because it undermines public policy under both Utah and Oregon law. Plaintiff points to Title VII, Section 1981, and Oregon Revised Statute ("ORS") § 569A.030(1), which each embody strong policies against employment discrimination. In turn, plaintiff argues that the public's substantial interest in the enforcement of these policies requires that his claims be resolved in an open forum where the integrity of the proceedings can be monitored and tested.

      The FAA was enacted "to reverse the longstanding judicial hostility to arbitration

agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The United States Supreme Court has concluded that the FAA demonstrates a "liberal federal policy favoring arbitration agreements." *Id.* at 25 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Oregon and Utah likewise favor arbitration. *See Mariposa Express, Inc. v. United Shipping Sols., LLC*, 295 P.3d 1173, 1177 (Utah 2013) ("Utah courts have consistently recognized Utah's policy favoring arbitration."); *Livingston v. Metro. Pediatrics, LLC*, 234 Or. App. 137, 147, 227 P.3d 796 (2010) ("Oregon, like the federal courts, recognizes a presumption in favor of arbitrability.").

Statutory claims, as well as common law claims, may be arbitrated. *See Gilmer*, 500 U.S. at 24 (finding Age Discrimination in Employment Act claim subject to arbitration). Employers may require employees to sign arbitration agreements for Title VII claims as a condition of employment, provided that they comply with traditional principles of contract law. *E.E.O.C. v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 750 (9th Cir. 2003).

Plaintiff relies on caselaw that identifies employment discrimination as a matter of substantial public concern. However, plaintiff has not, and cannot, identify caselaw denying arbitration solely based on federal and state public policies against employment discrimination. Rather, arbitration continues to be a proper forum to resolve employment discrimination claims. Thus, public policy concerns do not render the arbitration provision unenforceable.

In sum, Union Pacific may enforce the arbitration agreement, with the exception of the unilateral carve-out and prohibition on punitive damages and injunctive relief portions.

## C.    Parties to Arbitration

Having found that the arbitration provision is enforceable by Union Pacific, with the noted limitations, the Court now turns to PTRC's Motion for Joinder. PTRC advances three separate arguments for why it may also compel arbitration under the Standard Terms and Conditions: (1) It is an "affiliate"; (2) it is a third-party beneficiary; or (3) it is a nonsignatory under principles of contract law. *See* PTRC's Reply to Pl.'s Opp. to PTRC's Mot. for Joinder ("PTRC's Reply"), ECF [37].

1.    *Affiliate*

First, PTRC argues that it is an intended party to the agreement because it is an "affiliate" of Union Pacific. The arbitration clause, in relevant part, states:

> "You and the Company each agree that any controversy, claim, or dispute arising out of or relating to these Standard Terms and Conditions or arising out of or relating to your employment relationship with the Company or any of its affiliates, the termination of such relationship, or your conduct following the termination of such relationship, shall be resolved by binding arbitration[.]"

Kingston Decl., Ex. B, at 7. PTRC relies on the phrase "arising out of or relating to your employment relationship with the Company or *any of its affiliates*…" PTRC's Reply 3 (emphasis added). Plaintiff, however, argues that the phrase "purports to show that Brown and the Company agree to arbitrate claims *against each other*." Pl.'s Opp. to PTRC's Mot. for Joinder ("Pl.'s Opp. to Joinder"), ECF [35], at 7 (emphasis in original). The Court agrees with plaintiff. The plain language of the arbitration clause shows that only plaintiff and the Company agreed to arbitrate claims arising out of plaintiff's employment relationship with the Company, including claims that arise out of plaintiff's relationship with the Company's affiliates. That is, although the scope of the arbitration clause may include claims that arose from plaintiff's employment relationship with a Company affiliate, the only parties bound to arbitration by the clause are the Company and plaintiff. Thus, PTRC must show that it falls under the definition of "the Company" to compel arbitration under this reasoning.

The Standard Terms and Conditions provides that "any reference to the Company (as defined below) shall include a reference to any Subsidiary." *Id.* at Ex. B, at 1. PTRC has failed to show, or even argue, that it is a "subsidiary" of Union Pacific. Even so, it is undisputed that PTRC is an Oregon corporation jointly owned by Union Pacific and Burlington Northern Santa Fe Railway Company. First Amended Compl. ¶ 5. Although PTRC may be an "affiliate" of Union Pacific, it is not a subsidiary. *See* Affiliate and Subsidiary Corporation Definition, *Black's Law Dictionary*, (11th ed. 2019), *available* at Westlaw (affiliate refers to a "corporation that is related to another corporation by shareholdings or other means of control," and subsidiary refers to a "corporation in which a parent corporation has a controlling share"). Thus, PTRC's motion fails under this theory.

2. *Third-Party Beneficiary*

Next, PTRC argues that, in the alternative, it is an intended third-party beneficiary of the contract. The Utah Supreme Court has defined third-party beneficiaries to a contract as "those 'recognized as having enforceable rights created in them by a contract to which they are not parties and for which they give no consideration.'" *Bybee v. Abdulla*, 189 P.3d 40, 49 (Utah 2008) (quoting *Rio Algom Corp. v. Jimco, Ltd.*, 618 P.2d 497, 506 (Utah 1980)). To determine whether a party has third-party beneficiary status, Utah courts first look to the written contract, *Wagner v. Clifton*, 62 P.3d 440, 442 (Utah 2002), and find such status only if "the parties to the contract clearly express an intention 'to confer a separate and distinct benefit' on the third party," *Bybee*, 189 P.3d at 40 (quoting *Rio*, 618 P.2d at 506). Moreover, "[i]t is not enough that the parties to the contract know, expect or even intend that others will benefit from the [contract] . . . . The contract must be undertaken for the plaintiff's direct benefit and the contract itself must affirmatively make this intention clear." *Lilley v. JP Morgan Chase*, 317 P.3d 470, 472 (Utah Ct. App. 2013) (alterations in original) (internal quotation marks omitted).

PTRC has failed to show, or even explain, how it is an intended third-party beneficiary. The terms of the contract are clear: Plaintiff entered into the contract for participation in the Union Pacific Corporation Stock Incentive Plan for Union Pacific executives. The contract has nothing to do with PTRC or plaintiff's employment relationship with PTRC, and thus it cannot reasonably be construed as a contract undertaken for PTRC's benefit. Indeed, the contract concerns stock awards for plaintiff, indicating that it was undertaken for his benefit, not PTRC's. Accordingly, PTRC cannot compel arbitration as an intended third-party beneficiary.

3.    *Nonsignatory*

"Generally, parties who have not assented to an arbitration agreement cannot be compelled to arbitrate under its terms." *Namisnak v. Uber Techs., Inc.*, 971 F.3d 1088, 1094 (9th Cir. 2020). However, "[t]he United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)). Under Utah law, in "certain circumstances, a nonsignatory to

14

an arbitration agreement can enforce or be bound by an agreement between other parties." *Ellsworth v. Am. Arb. Ass'n*, 148 P.3d 983, 989 (Utah 2006). "[F]ive theories for binding a nonsignatory to an arbitration agreement have been recognized: (1) incorporation by references; (2) assumption; (3) agency; (4) veil-piercing/alter-ego; and (5) estoppel." *Id.* at 989 n.11.

   Here, PTRC argues that it is entitled to compel arbitration because an "arbitration agreement can be enforced by certain non-signatories under principles of agency and contract law." PTRC's Reply 4. However, PTRC's argument seems to be aimed at estoppel theory rather than agency theory. PTRC cites to *Franklin v. Community Regional Medical Center*, 998 F.3d 867 (9th Cir. 2021), for the proposition that it may compel arbitration because plaintiff's "claims against PTRC are 'intimately founded [in] and intertwined with' his claims against [Union Pacific]." PTRC's Reply 4-5. Plaintiff, however, argues that *Franklin* stands for the proposition that a nonsignatory defendant can compel arbitration only where the "plaintiff's claims [are] 'intimately founded in and intertwined with' *the arbitration contract*" itself. Pl.'s Sur-Reply in Opp. to PTRC's Mot. for Joinder, ECF [39], at 6 (emphasis in original) (citing *Franklin*, 998 F.3d at 873). The Court agrees with plaintiff.

   The doctrine of estoppel in *Franklin* and other jurisdictions, including Utah, assesses whether the plaintiff's claims are "intimately founded in and intertwined with the underlying contract obligations." *See Franklin*, 998 F.3d at 871; *Reeves v. Enter. Prods. Partners*, 17 F.4th 1008, 1015 (10th Cir. 2021) (compelling arbitration where plaintiff's claims arose out of employment agreement that included arbitration provision); *I-Link Inc. v. Red Cube Int'l AG*, No. 20-5020, 2001 WL 741315, at *5 (D. Utah Feb. 5, 2001) (compelling arbitration because plaintiff's claims were "intertwined with the Cooperation Agreement" that included arbitration provision). Therefore, plaintiff's claims against PTRC must be "founded in" or "intertwined with" the *arbitration agreement* itself, not with his claims against Union Pacific.

   The Court finds that plaintiff's claims are not "founded in" or "intertwined with" the arbitration agreement, which arises out of a stock option agreement. Indeed, plaintiff's claims solely focus on wrongful termination and retaliation due to racial discrimination. First Amended Compl. ¶¶ 25-28.

15

Plaintiff's stock awards have no relationship to his claims.  Thus, PTRC cannot compel arbitration under the Standard Terms and Conditions through estoppel.

## CONCLUSION

Accordingly, defendant Union Pacific's Motion to Compel Arbitration, ECF [22], is GRANTED and defendant PTRC's Motion for Joinder, ECF [33], is DENIED.

IT IS SO ORDERED.

DATED this 21st day of November, 2023.

_Adrienne Nelson_
Adrienne Nelson
United States District Judge